# COURT OF APPEALS
# DECISION
# DATED AND FILED

## August 20, 2019

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2018AP1651-CR**

Cir. Ct. No. **2015CF4240**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

  V.

SCOTT F. FERGUSON, JR.,

    DEFENDANT-APPELLANT.

      APPEAL from a judgment of the circuit court for Milwaukee County: M. JOSEPH DONALD, Judge. *Affirmed*.

      Before Brash, P.J., Kessler and Dugan, JJ.

      **Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.  Scott F. Ferguson, Jr., appeals from a judgment of conviction for one count of first-degree intentional homicide by use of a dangerous weapon and four counts of possession of a firearm by an adjudicated delinquent. *See* WIS. STAT. §§ 940.01(1)(a), 939.63(1)(b), and 941.29(2)(b) (2015-16).[1] Ferguson argues that he is entitled to a new jury trial because the admission of a particular photograph violated his constitutional right of confrontation.  He also argues that there was insufficient evidence to convict him of three firearm possession charges.  We affirm.

## BACKGROUND

¶2     The criminal complaint alleged that Ferguson was the man who exited his car, fought in the street with a man named Marqui D. Hogan, and then shot Hogan multiple times, causing his death.  The complaint indicated that video from a security camera shows that the man who shot Hogan was driving a white SUV.  Ferguson was charged with one count of being a delinquent in possession of a firearm and first-degree intentional homicide while armed.

¶3     At the preliminary hearing, a detective testified that after Ferguson was charged, he was arrested at the home of a friend.  Officers who searched the home found three firearms.  Based on that testimony, the information was amended to add three additional charges of possession of a firearm by an adjudicated delinquent.

---

[1] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

¶4 The case proceeded to trial. Ferguson was found guilty of all charges. For the homicide, the trial court sentenced Ferguson to life imprisonment without the possibility of release. For the firearm possession convictions, the trial court imposed four sentences of five years of initial confinement and five years of extended supervision, to be served concurrent with each other but consecutive to the homicide count. This appeal follows.

## DISCUSSION

¶5 Ferguson presents two arguments on appeal. First, he argues that the admission of a particular photograph at trial violated his constitutional right of confrontation. Second, he argues that there was insufficient evidence to convict him of three firearm possession charges. We consider each issue in turn.

## I. Admission of the photograph.

¶6 Before opening statements, the State asked the trial court to rule on the admissibility of a photograph of Ferguson sitting in a white vehicle. The State said that a police officer would testify that he received the photograph from a confidential informant on July 4, 2015, which was two months before Hogan was shot. The State explained that it wanted to introduce the photograph to support its theory that the white car in the photograph "is the white automobile that the defendant was in at the time of the homicide, and which was subsequently recovered in October of 2015."

¶7 The defense opposed the admission of the photograph on hearsay and confrontation grounds. In response, the State argued, "There is no confrontation issue here because sending a photograph to an officer is not testimonial; it's not a statement." The State explained that the officer would be

providing "simply an explanation of the source of the photograph." The trial court ruled that the photograph could be admitted, noting that the defense would be able to cross-examine the officer.

¶8 As anticipated, Officer Daniel Keller, an intelligence analyst, testified that a confidential source emailed the photograph to him on July 4, 2015. The State did not ask Keller why the photograph was sent to him, although it did ask this general question: "[I]s it part of your responsibility as an intelligence analyst to keep in touch with confidential sources and to acquire information from them?" Keller replied, "Yes." Keller testified that he printed the photograph and showed it to other police officers, but he did not specify why he did so.

¶9 The State asked Keller to describe what was in the photograph. Keller pointed out letters on the car's inner door frame that were stamped on a metal plate. Keller said he conducted research on vehicles and determined that that type of metal plate can be found in the inner door frame of a Subaru Tribeca, which was the type of vehicle the State alleged Ferguson was driving at the time of the shooting and which was recovered in October 2015. The defense did not ask Keller any questions about the photograph.

¶10 The jury also heard brief testimony about the photograph from a woman named Tara O'Kelly, who lived in the home where Ferguson was arrested and where officers found three firearms. The State showed O'Kelly the photograph and asked if she recognized anyone in it. She indicated that the man in the driver's seat of the vehicle was Ferguson.

¶11 On appeal, Ferguson argues that his constitutional right to confront a witness against him was violated because the confidential informant who provided the photograph to Keller was not called to testify. We begin our analysis with the

applicable law. "[A] defendant's right to confrontation is violated if the trial court receives into evidence out-of-court statements by someone who does not testify at the trial if those statements are 'testimonial' and the defendant has not had 'a prior opportunity' to cross-examine the out-of-court declarant." *State v. Mattox*, 2017 WI 9, ¶24, 373 Wis. 2d 122, 890 N.W.2d 256 (citation omitted). "[W]hether the admission of evidence violates a defendant's right of confrontation is a question of law subject to independent appellate review." *State v. Griep*, 2015 WI 40, ¶17, 361 Wis. 2d 657, 863 N.W.2d 567 (citation omitted).

¶12 Ferguson contends that "[p]roviding the digital photo to police was a 'statement'" by the informant and that the statement was "testimonial" as those terms are used in the relevant case law. *See, e.g.*, *Mattox*, 373 Wis. 2d 122, ¶24. Ferguson further argues that the informant was not unavailable and that the defense should have had an opportunity to cross-examine the informant. We reject Ferguson's argument because we conclude that sending the photograph to the officer was not a statement. Therefore, we need not consider whether the statement was testimonial, whether the informant was unavailable, or other issues in the confrontation analysis. *See State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989) (holding that "cases should be decided on the narrowest possible ground").

¶13 Wisconsin's rules of evidence define hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." *See* WIS. STAT. § 908.01(3). Section 908.01(1) defines a "statement" as "(a) an oral or written assertion or (b) nonverbal conduct of a person, if it is intended by the person as an assertion."

¶14 Ferguson argues that sending the photograph to the officer was "nonverbal conduct" by the informant that was intended to be "an assertion" that Ferguson was involved in crime. *See id.* In support, he quotes *United States v. Cromer*, 389 F.3d 662, 675 (6th Cir. 2004), which states: "Tips provided by confidential informants are knowingly and purposely made to authorities, accuse someone of a crime, and often are used against the accused at trial." Ferguson argues that here, "since the informer's act of providing the photo was functionally the same as making an oral statement the person in the photo was involved in crime, providing the digital photo was a 'statement' as defined by statute."

¶15 We are not persuaded. Even if we assume there are factual situations where sending a photo to an officer could constitute a nonverbal statement as defined by WIS. STAT. § 908.01(1)(b), the facts do not support that conclusion in this case. The jury was not told why the informant sent the photograph to the officer. Ferguson assumes that the informant was asserting that Ferguson "was involved in crime," but there was no testimony to support that conclusion. The informant may have been sharing the photograph with the officer because Ferguson was a victim or a witness, because Ferguson would provide an alibi for someone, because Ferguson was displaying a unique hand gesture, because Ferguson was wearing an article of clothing the officer asked about, or for a host of other reasons. We will not assume that by providing the photograph the informant intended to assert anything, much less that Ferguson was involved in crime. Furthermore, there is no possibility that the informant was asserting that Ferguson was involved in the crimes for which he was on trial because the photograph was sent to the officer two months before the shooting.

¶16 In short, the informant's act of providing the photograph to the officer was not an out-of-court statement as defined by WIS. STAT. § 908.01(1)(b).

Therefore, admitting that photograph into evidence did not violate Ferguson's confrontation rights. *See* ***Mattox***, 373 Wis. 2d 122, ¶24.

## II. Sufficiency of the evidence concerning three firearms.

¶17 Ferguson argues there was insufficient evidence that he possessed three firearms that were recovered from O'Kelly's home about two weeks after the shooting.[2] In order to convict Ferguson, the State had to prove that he possessed a firearm and was previously adjudicated delinquent of a crime that would have been a felony. *See* WIS. STAT. § 941.29(2)(b) (2015-16); WIS JI—CRIMINAL 1343. Ferguson stipulated to his prior adjudication, so the jury was asked to determine only whether Ferguson possessed the weapon. The jury was instructed:

> "[P]ossessed" means that the defendant knowingly had actual physical control of a firearm.
>
> An item is also in a person's possession if it is in an area over which the person has control and the person intends to exercise control over the item. It is not required that a person own an item in order to possess it. What is required is that the person exercises control over the item. Possession may be shared with another person. If a person exercises control over an item, that item is in his possession even though another person may also have similar control.

*See* WIS JI—CRIMINAL 1343.

¶18 Whether the evidence was sufficient to sustain a guilty verdict is a question of law that we review independently. *See* ***State v. Smith***, 2012 WI 91, ¶24, 342 Wis. 2d 710, 817 N.W.2d 410. We apply a "highly deferential" test

---

[2] The State did not argue that any of the three firearms were used to kill Hogan. Indeed, the firearms expert testified that the firearms recovered from the closet were not the firearms used to shoot Hogan.

when reviewing the sufficiency of the evidence to support a defendant's conviction. *State v. Kimbrough*, 2001 WI App 138, ¶12, 246 Wis. 2d 648, 630 N.W.2d 752. We will not substitute our judgment for that of the factfinder "unless the evidence, viewed most favorably to the [S]tate and the conviction, is so lacking in probative value and force that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt." *State v. Poellinger*, 153 Wis. 2d 493, 507, 451 N.W.2d 752 (1990). We must affirm "[i]f any possibility exists that the trier of fact could have drawn the appropriate inferences from the evidence adduced at trial to find the requisite guilt." *Id.* This standard applies regardless of whether a verdict is based on direct or circumstantial evidence. *Id.* at 503.

¶19 Ferguson was arrested at O'Kelly's home, where he had spent the night.[3] When detectives searched the home, they found the following items in O'Kelly's bedroom closet: "three firearms, two boxes of ammunition, a ballistic vest, a box for a cell phone, and also a cell phone broken into four pieces." One of the firearms was found in a blue bag that O'Kelly testified was hers, but she denied that any of the firearms belonged to her. She said that she did not know where the firearms came from, adding that many people visit her home with firearms. She also said that Ferguson did not bring anything with him to the home the night before he was arrested.

¶20 The jury heard evidence that Ferguson's fingerprint was found on a plastic storage tray inside a box of ammunition designed for a ten millimeter firearm, which was one type of firearm found in the closet. The fingerprint

---

[3] O'Kelly testified that she and Ferguson had been friends for a couple of years and that he spent the night on the living room couch.

examiner also said that Ferguson could not be excluded as the source of a fingerprint left on electrical tape that was removed from two ammunition magazines that were taped together and inserted into one of the firearms.[4] In addition, the jury heard evidence that Ferguson's DNA was recovered from the broken cell phone that was found near the firearms.

¶21 Viewing the evidence in a light most favorable to the verdicts, *see* **Poellinger**, 153 Wis. 2d at 507, we conclude that there was sufficient evidence to support the jury's findings that Ferguson possessed the firearms. Not only were they found in a home where he was staying, he was linked by fingerprint and DNA evidence to two items found with the firearms in O'Kelly's closet: the box of ammunition and the cellphone. Further, O'Kelly denied the firearms were hers. Based on the evidence presented, the jury could reasonably find that Ferguson brought the firearms to O'Kelly's home and exercised control over the firearms at the residence.[5] *See* WIS JI—CRIMINAL 1343.

> *By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[4] The fingerprint examiner testified: "I found that the right index finger for Mr. Ferguson could not be excluded as the source for this print. However, this print had certain amounts of distortion that precluded me from making a positive identification."

[5] The jury was free to accept O'Kelly's testimony that the firearms did not belong to her and to reject her testimony that Ferguson did not bring anything into the house. *See* **O'Connell v. Schrader**, 145 Wis. 2d 554, 557, 427 N.W.2d 152 (Ct. App. 1988) ("[T]he jury, as ultimate arbiter of credibility, has the power to accept one portion of a witness'[s] testimony, reject another portion and assign historical facts based upon both portions.").