STATE of Wisconsin, Plaintiff-Respondent,

v.

Shelby BLALOCK, Defendant-Appellant. †

Court of Appeals

*No. 88–1094–CR. Submitted on briefs January 3, 1989.—*
*Decided May 4, 1989.*

(Also reported in 442 N.W.2d 514.)

† Petition to review denied.

689

For the plaintiff-respondent the cause was submitted on the briefs of *Donald J. Hanaway,* attorney gen-

eral, with *Christopher G. Wren,* assistant attorney general.

For the defendant-appellant the cause was submitted on the briefs of *Luck & Rosenthal, S.C.,* with *Joel H. Rosenthal* of counsel, of Milwaukee.

Before Moser, P.J., Sullivan and Fine, JJ.

FINE, J.   Shelby Blalock appeals from a judgment of conviction entered on jury verdicts finding him guilty of conspiracy to deliver marijuana on January 9, 1986, in violation of secs. 161.41(1)(b), 161.14(4)(t), and 939.31, Stats., and two counts of possession of marijuana (on January 9, 1986 and February 2, 1986) with intent to deliver, in violation of secs. 161.41(1m)(b) and 161.14(4)(t), Stats. He raises seven issues: (1) whether the trial court lacked personal jurisdiction because the complaint was insufficient; (2) whether the trial court lacked personal jurisdiction because the evidence adduced at the preliminary examination did not support the bindover; (3) whether certain out-of-court statements of an alleged co-conspirator should have been received into evidence; (4) whether conversations between the alleged co-conspirator and third persons should have been admitted into evidence; (5) whether the trial court should have admitted into evidence conversations between Blalock and the alleged co-conspirator that took place on dates other than January 9 and February 2, 1986; (6) whether the trial court should have instructed the jury on the lesser included crime of possession of marijuana; and (7) whether Blalock deserves a new trial "in the interest of justice."[1] We affirm.

---

[1] Although Blalock's notice of appeal is also from the court's termination of work-release privileges, *see* sec. 973.09(4), Stats., this matter has not been addressed in his brief, and is, accordingly, waived. *See Reiman Assocs., Inc. v. R/A Advertising, Inc.,*

## I. The Complaint

Blalock was charged in counts two and three of an eighteen count complaint, which alleged various drug related offenses involving thirteen defendants. Count two alleged that on January 9, 1986, Blalock and Scott Thomas entered into an illegal conspiracy for Blalock to sell marijuana to Thomas. The complaint further alleged that, pursuant to the conspiracy, Thomas "contacted purchasers" for the marijuana. Count three alleged that Blalock intentionally possessed marijuana on January 9, 1986, with the intent to deliver it.

The complaint was sworn to by a Milwaukee police detective lieutenant. The detective recounted that from January 9, 1986 through February 3, 1986, he and other Milwaukee police officers monitored telephone conversations from Thomas' home phone between Thomas and other persons. Transcripts of those telephone conversations were incorporated into the complaint in order to establish "the essential facts" of the crimes charged. *See* sec. 968.01, Stats.

A complaint passes muster if it recites facts that "would lead a reasonable person to conclude that a crime had probably been committed and that the defendant named in the complaint was probably the culpable party." *State v. Gaudesi,* 112 Wis. 2d 213, 219, 332 N.W.2d 302, 305 (1983). Criminal complaints must be evaluated with a common sense, non-hypertechnical, reading. *Ibid.*

Section 161.41(1), Stats., makes it "unlawful for any person to . . . deliver a controlled substance." Marijuana is a controlled substance. Sec. 161.14(4)(t), Stats.

102 Wis. 2d 305, 306 n. 1, 306 N.W.2d 292, 294 n. 1 (Ct. App. 1981).

Sections 161.41(1x) and 939.31, Stats., subject to criminal penalty any person who, "with intent that a crime be committed, agrees or combines with another for the purpose of committing that crime," as long as "one or more of the parties to the conspiracy does an act to effect its object." Sec. 939.31, Stats.

■ The intercepted telephone conversations between Blalock and Thomas, and Thomas and others (Blalock was mentioned as a marijuana supplier during the course of some of these conversations) presented in the complaint are sufficient to lead a reasonable person to conclude that Blalock and Thomas agreed on January 9, 1986, that Blalock would supply Thomas with marijuana and that Thomas and Blalock did things to accomplish the goal of that agreement. Accordingly, the complaint establishes probable cause in connection with count two, which charged Blalock and Thomas with a conspiracy to have Blalock deliver marijuana to Thomas.

■ The complaint also establishes probable cause in connection with count three, which charged that Blalock possessed marijuana on January 9, 1986, with intent to deliver. The complaint recites that on January 9, Thomas and Blalock had the following telephone conversation at 7:10 P.M.:

Scott Thomas: "Hello."
Shelby Blalock: "Yeah, Shelby."
Scott Thomas: "Yeah, ah yeah, man I wanted to get a qt, quarter pound if you got one."
Shelby Blalock: "Alright."
Scott Thomas: "How is it?"

| | |
|---|---|
| Shelby Blalock: | "It's, ah, it's real good it's gold lookin man, but it's got a lot of seeds to it." |
| Scott Thomas: | "Damn, I guess you gotta give and take you know. How much does it go for?" |
| Shelby Blalock: | "190." |
| Scott Thomas: | "Oh boy, boy, boy, boy, boy, wow, it's a little steep there ain't it Shel?" |
| Shelby Blalock: | "Yeah, it is man, but you know it's like the top of the line now." |
| Scott Thomas: | "Well, why don't you bring me over one man if you can, or you want me to come over or how you?" |
| Shelby Blalock: | "I'll tell you what, see I'm fixin to, ah, why don't you let me call you right back and I'll let you know how everything is alright?" |
| Scott Thomas: | "Okay." |

This conversation provides a reasonable basis to conclude that Blalock possessed marijuana on January 9, 1986, with intent to deliver. Since the complaint states probable cause, the trial court did not lack jurisdiction to hold the preliminary examination. *See State ex rel. Cullen v. Ceci,* 45 Wis. 2d 432, 441, 173 N.W.2d 175, 178–179 (1970).

## II.  The Preliminary Examination

▮▮▮▮

"A preliminary examination is a hearing before a court for the purpose of determining if there is probable cause to believe a felony has been committed by the

defendant." Sec. 970.03(1), Stats. It is a screening device to assure that "the accused is not being prosecuted too hastily, improvidently, or maliciously and that there exists a substantial basis for bringing the prosecution." *State v. Dunn,* 121 Wis. 2d 389, 398, 359 N.W.2d 151, 155 (1984). Thus, a court presiding over a preliminary examination must decide "whether the facts and the reasonable inferences drawn therefrom support the conclusion that the defendant probably committed a felony." *Id.* at 397–398, 359 N.W.2d at 155. A trial court's determination that the evidence is sufficient to support a bindover is a question of law that we independently analyze. *Id.* at 398–399, 359 N.W.2d at 155.

Only two witnesses testified at the preliminary examination. The State and Blalock stipulated that their testimony and the facts contained in the criminal complaint could be used to establish probable cause to support a bindover. Blalock, however, challenged the evidence's sufficiency.

At the conclusion of the preliminary examination, the trial court found that there was probable cause to believe that Blalock "committed the felonies outlined in the criminal complaint," specifically Counts 2 and 3, and bound him over for trial. Following the bindover, the State filed an Information charging Blalock with the felonies charged in counts 2 and 3 of the criminal complaint and added a new, unnumbered, count that charged Blalock with possession of marijuana on February 2, 1986, with intent to deliver.

The only witness testifying at the preliminary examination whose testimony related to Blalock was Cari Lynn Peters. She lived with Thomas for some eight months, beginning with the middle or the end of January 1986, although she "stayed there quite frequently before." She testified that she met Blalock when he vis-

ited Thomas' apartment sometime after the middle of January of 1986 and that she remembered Blalock bringing about a quarter of a pound of marijuana, which she described as "a larger quantity," to Thomas twice, but could not recall the dates. Thomas, she testified, would then separate, weigh, and package the marijuana, which he would either smoke or sell.

As determined earlier, the complaint established probable cause to believe that Blalock possessed marijuana on January 9, 1986, with intent to deliver, and that he conspired with Thomas to supply Thomas with marijuana. Since Blalock and the State stipulated that the facts in the criminal complaint could be considered with Peters' testimony for purposes of the preliminary examination, there was a sufficient showing of probable cause to support a bindover in connection with these offenses.

The Information's unnumbered count charged Blalock with possession of marijuana on February 2, 1986, with intent to deliver. This crime was not charged in the complaint. In pressing felony charges following a bindover, the State is not limited to the crimes initially charged in the complaint but may, in its discretion, charge any offense that is not " 'wholly unrelated' to the facts adduced at the preliminary hearing." *State v. Hooper,* 101 Wis. 2d 517, 535–536, 305 N.W.2d 110, 119–120 (1981). Here, by stipulation, the "facts adduced at the preliminary examination" included the facts alleged in the criminal complaint. The complaint relates the following intercepted telephone conversation between Blalock and Thomas on the morning of February 2, 1986:

698

Scott Thomas: "You got some of that nice smokish?"

Shelby Blalock: "Ah, huh." (in the affirmative) "Nice, nice I know you're gonna like this."

Scott Thomas: "Oh, yeah?"

Shelby Blalock: "Yep."

Scott Thomas: "Yeah, I'll probably be in the market for some, probably, shit, yeah, I know today for sure, cause I'm, I'm got maybe two, two, three "J's" left."

Shelby Blalock: "I hear that."

Scott Thomas: "So I'm gonna be wantin to pick up some probably, man, about 1 o'clock or so."

Shelby Blalock: "Alright."

The reasonable inference that can be drawn from this conversation is that Blalock had marijuana on February 2, 1986, and that he intended to deliver it. The evidence adduced at the preliminary examination is sufficient to support the unnumbered count of the Information.

### III.   Statements by a Co-conspirator

Blalock recognizes that an out-of-court statement by a co-conspirator is not hearsay and may, accordingly, be used as evidence against any member of the conspiracy. Rule 908.01(4)(b)5, Stats.[2] He contends, however,

---

[2] Rule 908.01(4), Stats., provides in material part:

A statement is not hearsay if:

. . .

(b) *Admission by party opponent.* The statement is offered against a party and is:

. . .

that the State failed to make a *prima facie* showing that there was a conspiracy by evidence independent of the conversations (including those between him and Thomas) and that, therefore, under *State v. Dorcey*, 103 Wis. 2d 152, 157–158, 307 N.W.2d 612, 615 (1981), the conversations should not have been admitted into evidence. We disagree.

The rule in *Dorcey* stems from the proposition that objected-to evidence should not be admitted when the only foundation for its admission is the evidence itself. Thus, as expressed in the seminal case, *Glasser v. United States*, 315 U.S. 60 (1942), out-of-court declarations whose admissibility is sought under the co-conspirator exclusion from the rule against hearsay "are admissible over the objection of an alleged co-conspirator, who was not present when they were made, only if there is proof *aliunde* that he is connected with the conspiracy. Otherwise, hearsay would lift itself by its own bootstraps to the level of competent evidence." *Id.* at 74–75 (citations omitted). The "proof *aliunde*" foundation may, however, be satisfied by the out-of-court declarations themselves, if they are independently admissible. *See United States v. DeJesus*, 806 F.2d 31, 35 (2d Cir. 1986), *cert. denied*, 479 U.S. 1090 (1987); *United States v. Perez*, 824 F.2d 1567, 1572 (11th Cir. 1987).

As the trial court noted, the conversations between Blalock and Thomas reflected the very essence of the charged conspiracy; they simultaneously established the conspiracy and Blalock's role in it. Blalock's own statements made during the course of those conversations

---

5. A statement by a coconspirator of a party during the course and in furtherance of the conspiracy.

were independently admissible into evidence under Rule 908.01(4)(b)1, Stats., which excludes from the rule against hearsay any statement made by a "party opponent." Accordingly, Blalock's statements could establish the co-conspirator foundation under Rule 908.01(4)(b)5, Stats. *See United States v. Rengifo,* 789 F.2d 975, 984 (1st Cir. 1986) (applying Fed. R. Evid. 801(d)(2) (E)). Additionally, Blalock's participation in the transcribed conversations with Thomas manifest his adoption of Thomas' statements insofar as they established the context of Blalock's remarks and demonstrated the conspiratorial relationship. Thomas' statements were thus not hearsay for two reasons.

First, Thomas' statements were not hearsay by virtue of Rule 908.01(4)(b)2, which excludes from the rule against hearsay a statement in which a "party opponent" "has manifested his adoption or belief in its truth," *See State v. Marshall,* 113 Wis. 2d 643, 651–652, 335 N.W.2d 612, 615–616 (1983) (party adopts other person's statement by silence under circumstances when that statement would ordinarily draw a denial). Blalock's adoptive admissions of Thomas' statements made those statements admissible to establish the conspiracy foundation under Rule 908.01(4)(b)5, Stats. *See United States v. Carter,* 760 F.2d 1568, 1580–1581 (11th Cir. 1985) (defendant's own statements and adoptive admissions constitute independent evidence of conspiracy); *see United States v. Zielie,* 734 F.2d 1447, 1457 (11th Cir. 1984), *cert. denied,* 469 U.S. 1189, 469 U.S. 1216 (1985).

Second, at the point Thomas' statements were being used to establish a foundation to admit the conversations under Rule 908.01(4)(b)5, they were not being

701

admitted for the truth of what Thomas said. Thomas' remarks were thus not hearsay. *See* Rule 908.01(3), Stats.;[3] *Tennessee v. Street,* 471 U.S. 409, 413–414 (1985). For this additional reason, Thomas' statements were properly used to establish the foundation under Rule 908.01(4)(b)5. *See United States v. Perez,* 658 F.2d 654, 659 (9th Cir. 1981). Significantly, *Glasser* excepted from its anti-bootstrapping rule those out-of-court statements made in the presence of the alleged co-conspirator against whom admission of those statements is sought. *Glasser,* 315 U.S. at 74–75. The trial court properly admitted the intercepted conversations into evidence.

In light of our conclusion that the conspiracy was proven by sufficient evidence admissible by a route other than via Rule 908.01(4)(b)5, Stats., we need not consider to what extent, if any, *Bourjaily v. United States,* 107 S. Ct. 2775 (1987), has eroded in Wisconsin the continued vitality of *Dorcey's* independent-evidence requirement.

A decision by the United States Supreme Court interpreting a federal rule of evidence is persuasive—not binding—authority in connection with our construction of that rule's Wisconsin counterpart, *see State v. Schindler,* 146 Wis. 2d 47, 54, 429 N.W.2d 110, 113 (Ct. App. 1988), unless the decision is founded upon the United States Constitution. *See State v. Lamb,* 353 S.E.2d 857, 863 (N.C. Ct. App. 1987), *aff'd,* 365 S.E.2d 600 (N.C. 1988). *Cf. Ernst v. State,* 43 Wis. 2d 661, 672–674, 170 N.W.2d 713, 718–719 (1969); *Wheeler v. General Tire*

---

[3] Rule 908.01(3), Stats., provides:

**(3) Hearsay.** "Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.

*and Rubber Co.,* 142 Wis. 2d 798, 807, 419 N.W.2d 331, 334 (Ct. App. 1987).

*Dorcey* adopted the United States Supreme Court's rationale that a co-conspirator's statement should not be able to " 'lift itself by its own bootstraps to the level of competent evidence.' " *Dorcey,* 103 Wis.2d at 158, 307 N.W.2d at 615 (citing *Glasser,* 315 U.S. at 75). *Dorcey* relied on cases that antedated both the Federal Rules of Evidence and the Wisconsin Rules of Evidence (which were patterned after the federal rules and are, as relevant here, virtually identical to them).

Federal Rule 104(a), which is virtually identical to Wisconsin Rule 901.04(1), provides that a trial court "is not bound by the rules of evidence except those with respect to privileges" when it decides whether to admit or exclude evidence. *See also* Federal Rule 1101(d)(1) and its Wisconsin analogue, Rule 911.01(4)(a). *Bourjaily* held that Rules 104(a) and 1101(d)(1) overturned *Glasser*'s prohibition against "bootstrapping" since "Congress has decided that courts may consider hearsay in making these factual determinations." *Bourjaily,* 107 S. Ct. at 2780. As the Court noted:

> We think that there is little doubt that a co-conspirator's statements could themselves be probative of the existence of a conspiracy and the participation of both the defendant and the declarant in the conspiracy.

*Id.* at 2781. Since cases should be decided on the narrowest possible ground, the question of whether Wisconsin should follow *Bourjaily*'s lead and similarly apply Rules 901.04(1) and 911.01(4)(a) must await a case where that issue is squarely presented. Thus, in *Stewart v. State,* 756 P.2d 900 (Alaska Ct. App. 1988), the Alaska Court of Appeals declined to adopt *Bourjaily* in interpreting

A.R.E. 801(d)(2)(E), which is identical to federal rule 801(d)(2)(E), because there was sufficient independent evidence of the conspiracy and Stewart's connection to it. *Id.* at 904.

## IV.  Conversations Between Thomas and Others

Blalock argues that the trial court erred in admitting into evidence telephone conversations between Thomas and other persons that took place on January 9 and 10, 1986, which reflected Thomas' efforts to sell the marijuana. He contends that since the state conceded that there was no proof that he knew that Thomas was going to sell the marijuana, Thomas' efforts in this regard were not in furtherance of their conspiracy.

A conspiracy is an agreement between two or more persons to accomplish a criminal objective. *Bergeron v. State,* 85 Wis. 2d 595, 613, 271 N.W.2d 386, 392–393 (1978). Each member of the conspiracy must intend that the criminal objective be realized and have a stake in the venture. *Ibid.* Here, the criminal objective was the delivery of marijuana from Blalock to Thomas. There was sufficient evidence to show that both Blalock and Thomas intended that the delivery take place and that each had a stake in the enterprise. As the State points out, resale by Thomas of at least a portion of the quarter pound of marijuana Blalock had agreed to sell him was a foreseeable way of financing the purchase. Resale, and efforts at resale, were thus in furtherance of the conspiracy so that Thomas' conversations with potential buyers were admissible under Rule 908.01(4)(b)5, Stats. *See United States v. Kaplan,* 832 F.2d 676, 685 (1st Cir. 1987), *cert. denied,* 108 S. Ct. 1080 (1988) (statements admissible under Rule 801(d)(2)(E) of the Federal Rules

of Evidence even though defendant not aware of specific content of statements). Additionally, Thomas' fairly contemporaneous efforts to dispose of the marijuana gave credence to the charge that Blalock had, in fact, agreed to sell that marijuana to Thomas on January 9. *See United States v. Veal,* 703 F.2d 1224, 1230 (11th Cir. 1983) ("acts or statements of an alleged co-conspirator may be admitted at trial if relevant to prove the conspiracy existed, even if made after the conspiracy ended"). The statements between Thomas and potential purchasers of the marijuana were properly admitted into evidence.

### V.  Additional Conversations Between Blalock and Thomas

■

Blalock claims the trial court erred when it admitted six intercepted conversations between Blalock and Thomas that occurred on January 16, 19, 21, 23 (3:06 P.M.), 23 (3:19 P.M.) and 27, 1986. The conversations concerned marijuana and Blalock's efforts to get some of it for sale to Thomas. The trial court denied Blalock's motion *in limine* to exclude the conversations. It ruled that the conversations after January 16 were relevant "on the question of whether [Blalock] intended to deliver marijuana on February 2nd,"[4] and that the January 16 conversation was relevant to Blalock's intent in connection with the January 9 possession. "They are," the trial court observed, "circumstantial evidence addressing at the very minimum [Blalock's] intent to deliver marijuana at that time."

---

[4] The Information's unnumbered count charged Blalock with possession of marijuana on February 2, 1986, with intent to deliver.

Evidence is admissible if it is relevant; that is, if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rules 904.02, 904.01, Stats. The admission of evidence will be upheld on appeal if the trial court exercised its discretion "in accordance with accepted legal standards and in accordance with the facts of record." *State v. Wollman,* 86 Wis. 2d 459, 464, 273 N.W.2d 225, 228 (1979). Thus, a trial court's decision to admit or exclude evidence will not be upset on appeal "if there is a reasonable basis" for that decision. *State v. Pharr,* 115 Wis. 2d 334, 342, 340 N.W.2d 498, 501 (1983). Since there was a reasonable basis for the trial court's admission of the six conversations, its decision must be affirmed.

## VI. Instruction on Lesser-Included Offense

Blalock claims the trial court improperly refused to instruct the jury on possession of marijuana as a lesser-included offense of possession with intent to deliver. We disagree.

Possession of marijuana in violation of secs. 161.41(3), and 161.14(4)(t), Stats., is a lesser-included offense of possession of marijuana with intent to deliver. *See* sec. 939.66(1), Stats. A trial court may not give the jury the option of returning a verdict on a lesser-included crime of the offense charged unless, viewing the evidence in a light most favorable to the defendant, "there are reasonable grounds in the evidence both for acquittal on the greater charge and conviction on the lesser offense." *State v. Sarabia,* 118 Wis. 2d 655, 661–662, 348 N.W.2d

527, 531 (1984). In ruling on Blalock's request, the trial court made the following observation:

> There may be some basis for the jury to acquit the defendant entirely of any charges. That's up to them. But there is no basis for them to make the distinction suggested by the defense. The intent to deliver is evidenced on practically every page of the transcripts, especially the two critical transcripts we're talking about on January 9th and February 2nd. There's just absolutely no question, looking at those, that there's nothing being talked about other than delivery, some form of delivery, or intent to deliver.

We agree. The trial court properly declined to give the jury the opportunity to compromise its verdict. *See State v. Melvin,* 49 Wis. 2d 246, 253, 181 N.W.2d 490, 494 (1970).

## VII.  In the Interest of Justice

Blalock's final claim is that he is entitled to a new trial in the "interest of justice." As a basis for this request, he repeats his contention that the trial court erred in admitting "the numerous telephone conversations." Since we have determined that the telephone conversations were properly admitted into evidence, his quest for a new trial must be rejected. See *Mentek v. State,* 71 Wis. 2d 799, 809, 238 N.W.2d 752, 758 (1976), which appropriately condemns the practice of supporting a final plea for a new trial in the interest of justice with the repetition of arguments previously made. In any event, Blalock has presented nothing that persuades us that the jury's return of guilty verdicts on all three counts of the Information was "a probable miscarriage of justice" and that "a new trial would lead to a different

result." *See Schultz v. State,* 87 Wis. 2d 167, 174, 274 N.W.2d 614, 617 (1979).

    *By the Court.*—Judgment affirmed.