COURT OF APPEALS
DECISION
DATED AND FILED

May 27, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP1399-CR**

Cir. Ct. No. 2017CF2792

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT I**

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

TAMMY GENEVIEVE HARDENBURG,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Milwaukee County: DENNIS R. CIMPL, Judge. *Order reversed and cause remanded with directions*.

Before Blanchard, Dugan and Donald, JJ.

¶1 DONALD, J. Tammy Genevieve Hardenburg appeals a judgment of conviction, following a jury trial, of one count of operating a motor vehicle while under the influence of prescription drugs as a sixth offense. Hardenburg

also appeals from the order denying her postconviction motion for relief. Hardenburg contends that confrontation clause violations warrant a new trial because of plain error, or, alternatively, that she received ineffective assistance of counsel such that we should remand for a ***Machner***[1] hearing. We do not address the plain error argument but only whether Hardenburg's postconviction motion alleged facts sufficient to warrant a hearing on her ineffective assistance of counsel claim. We conclude that the alleged facts were sufficient and accordingly reverse the postconviction order and remand for a ***Machner*** hearing.[2]

## BACKGROUND

¶2      On June 14, 2017, Hardenburg was charged with one count of operating with a restricted controlled substance in her blood as a fifth or sixth offense. The charge was later amended to operating while under the influence of prescription drugs as a fifth or sixth offense.[3]

### Trial Testimony

¶3      The matter proceeded to trial where West Allis Police Officer John Kleinfeldt testified about the events leading up to the charge. Kleinfeldt testified that on the night of December 11, 2016, he noticed a vehicle in the parking lot of a gas station with the lights off and the motor running. Kleinfeldt testified that he decided to observe the vehicle for a few minutes, during which time he observed

---

[1] *See* **State v. Machner**, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

[2] While Hardenburg appeals from both a judgment and an order, we address only the order for the reasons set forth in the opinion.

[3] At trial, the parties stipulated that Hardenburg had a valid prescription for the drugs found in her system.

the occupant of the vehicle "continuously manipulate something with their hands and lean down and sometimes reach over to the passenger seat." Kleinfeldt testified that he decided to make contact with the occupant and that he notified his dispatch that he was about to do so. When Kleinfeldt approached the vehicle, he saw Hardenburg "manipulating a napkin with both hands." When Kleinfeldt questioned Hardenburg, she explained that she was trying to kill the bugs in the inside of her vehicle. Hardenburg also told Kleinfeldt that there were bugs in her purse and in her car that had migrated from her apartment. Kleinfeldt did not see any bugs in the napkin, the purse, or the car. Kleinfeldt testified that he asked Hardenburg to step out of the car so he could determine whether she was under the influence of drugs. Kleinfeldt testified that Hardenburg was unsteady on her feet, and "was talking very excitedly" with volume changes and exaggerated hand movements. Kleinfeldt testified that he detected a "faint" odor of alcohol, but clarified, however, that he could have been smelling her "bug spray." Kleinfeldt testified that Hardenburg consented to a search of her car. Kleinfeldt found a prescription pill bottle in the car, but could not recall what the prescription was for or whether the bottle contained any "cautions." Kleinfeldt testified that he then asked Hardenburg to perform field sobriety tests, which Hardenburg claimed she could not do because she had bugs in her eyes.

¶4     Kleinfeldt testified that Hardenburg continued to behave erratically, leading Kleinfeldt to question whether Hardenburg suffered from a mental illness and should be detained pursuant to WIS. STAT. ch. 51 (2017-18).[4] However,

---

[4] WISCONSIN STAT. ch. 51, also known as the "State Alcohol, Drug Abuse, Developmental Disabilities and Mental Health Act," describes the procedure for involuntary mental health commitments. All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

Kleinfeldt ultimately arrested Hardenburg for a suspected OWI. Hardenburg was transported to a local hospital for an evidentiary blood draw.

¶5 West Allis Police Officer Jacob Kaye testified that he was the backup officer dispatched to assist Kleinfeldt. He testified that Hardenburg told him she was taking "Suboxone and Adderall." He further stated that Hardenburg told him she was taking her medicine as prescribed and had last taken Adderall "in the morning time hours." Kaye testified that Hardenburg denied consuming any alcohol.

¶6 Leah Macans, a toxicologist at the Wisconsin State Crime Lab, introduced the lab report containing the results of Hardenburg's toxicology tests. Macans testified that she authored the report, but acknowledged that she did not conduct most of the tests summarized in the report. Macans testified that Hardenburg's blood was tested for the presence of multiple substances. Macans testified that the "ELISA" test, which tests for various illicit drugs, was conducted by another toxicologist, Amy Sasman. Macans testified that "Sasman concluded that amphetamines [was] positive and buprenorphine was positive." Macans testified that the next test summarized in the report, a Gas Chromatography/Mass Spectrometry screening, also conducted by Sasman, confirmed the presence of caffeine, topiramate, cotinine, fluoxetine, and lamotrigine in Hardenburg's blood. Topiramate, fluoxetine, and lamotrigine, Macans testified, are prescription antidepressants and anticonvulsants. Macans testified that she herself conducted additional tests that confirmed the presence of topiramate, fluoxetine, and lamotrigine.

¶7 The report further stated that a Gas Chromatography/Mass Spectrometry screening, conducted by another analyst, Jennifer Greene, confirmed

the presence of amphetamines in the amount of 320 micrograms per liter. Macans testified that the level of amphetamines found in Hardenburg's blood were well outside of the therapeutic range and could lead to impaired driving, overstimulation, excessive talking, aggression, and delusional parasitosis, which is the mistaken belief that bugs are crawling on the skin. Macans stated that delusional parasitosis has been documented in people who use amphetamines. Macans also stated that Hardenburg's behavior on the night of her arrest was consistent with the high level of amphetamines found in her blood.

¶8 Macans further testified about the potential side effects of the other substances found in Hardenburg's blood, but also stated that those substances were within the therapeutic range. Macans also testified that she could not differentiate between behavior caused by prescription drugs and behavior caused by mental illness. Macans also stated that she could not testify with certainty about the potential effects of interactions between Hardenburg's various prescription medications.

**Closing Arguments**

¶9 During closing arguments, the State detailed the evidence of Hardenburg's "odd" behavior and the events leading up to her arrest. The State also argued, based on Macans's testimony, that Hardenburg's behavior was consistent with the high levels of amphetamines found in her blood. Specifically, the State argued:

> The amphetamine, [Macans] said this was a stimulant, an upper she said. She stated that at excessive doses it can cause restlessness, confusion irritability, hyperactivity and aggression. Also high dosage, which is what [Hardenburg] had in her system, very, very high dosage, is associated with hallucinations and delusional parasitosis, and that is, as she stated, the belief that you're

almost being infested by parasites or bugs. And that's extremely consistent with Ms. Hardenburg's behavior all the time she thought the bugs were all over her.

Ms. Macans also testified that the amphetamine can cause impairment and it can affect the ability to safely operate a motor vehicle due to the overstimulation that a person is experiencing at such a high dosage. She stated that an individual wouldn't have the factors that you need to multitask because, as she said, when you're driving a car, you don't even notice, but you have to be able to multitask while you're doing that. And when you're so overly stimulated, you don't have those same factors to multitask. She even said on the stand that an individual taking this high amount, and this high amount in their system would not have the steady hand necessary to operate a motor vehicle.

¶10 The State also described the other medications found in Hardenburg's system, stating that despite being within the "therapeutic range," the medications still had potential side effects. However, the State emphasized that regardless of the presence of the other medications, "the amphetamine caused a lot of her behavior" because the "amount was so high."

¶11 Trial counsel acknowledged that Hardenburg's behavior was bizarre, but argued that the State lacked sufficient evidence to definitively suggest that Hardenburg's behavior was caused by prescription medications. Specifically, trial counsel reminded the jury that officers initially considered Hardenburg for a WIS. STAT. ch. 51 commitment, that neither officer witnessed Hardenburg actually driving, and that Macans's testimony was not based on an actual evaluation of Hardenburg; rather, Macans testified about the general effects of Hardenburg's prescriptions.

**Verdict, Sentencing, and Postconviction Motion**

¶12    The jury found Hardenburg guilty of operating while under the influence of prescription drugs as a sixth offense.  The trial court sentenced Hardenburg to two years of initial confinement followed by two years of extended supervision.

¶13    Hardenburg, through counsel, filed a postconviction motion for a new trial, arguing that the admission of lab reports with the results of tests conducted by Sasman and Greene violated her right to confrontation because neither analyst testified at trial.  Hardenburg argued that Sasman's and Greene's opinions were conveyed by Macans, who served as a "mere conduit" for Sasman's and Greene's opinions.  Hardenburg argued that the admission of the lab report, and Macans's corresponding testimony, was plain error.  Alternatively, Hardenburg argued that counsel was ineffective for failing to object to the evidence because the State's case was built primarily on the premise that Hardenburg had high levels of amphetamines in her system.

¶14    The postconviction court denied the motion without a hearing.[5]  This appeal follows.

## DISCUSSION

¶15    On appeal, Hardenburg contends that the admission of the lab report and Macans's corresponding testimony constituted plain error.  Alternatively, Hardenburg contends that counsel's failure to object to the evidence constitutes

---

[5] The motion also argued that Hardenburg was entitled to an additional sentence credit, which the postconviction court granted.

ineffective assistance of counsel, necessitating a *Machner* hearing. The State argues that admission of amphetamine evidence does not constitute plain error because any error was harmless due to other strong evidence of guilt and because the amphetamine evidence was cumulative with uncontested facts.[6] The State also contends that the trial court properly denied the ineffective assistance claim without an evidentiary hearing because the record conclusively shows that Hardenburg was not prejudiced by any deficient performance. We do not address the first issue.[7] On the second issue, we conclude that Hardenburg's postconviction motion alleged sufficient material facts, which if true, would entitle her to an evidentiary hearing on her ineffective assistance of counsel claim.

¶16 Whether counsel rendered ineffective assistance is a mixed question of fact and law. *See State v. Nielsen*, 2001 WI App 192, ¶14, 247 Wis. 2d 466, 634 N.W.2d 325. We uphold the trial court's findings of fact unless they are clearly erroneous. *See id.* However, whether the defendant's proof is sufficient to establish ineffective assistance is a question of law that we review independently. *See id.*

¶17 To prevail on an ineffective assistance claim, a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To

---

[6] The State effectively concedes Hardenburg's argument that under *State v. Griep*, 2015 WI 40, ¶40, 361 Wis. 2d 657, 863 N.W.2d 567, Macans's testimony did not meet the requisite standard of admissibility, but contends that: *Griep* is not controlling; and that regardless of Hardenburg's position, we "need not analyze" this topic based on the State's harmless error argument.

[7] We need not address this separate potential basis for reversal. *See State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989) ("[C]ases should be decided on the narrowest possible ground.").

prove deficient performance, a defendant must point to specific acts or omissions by counsel that are "outside the wide range of professionally competent assistance." *Id.* at 690. To demonstrate prejudice, the defendant must show there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. If a defendant fails to make a sufficient showing on one prong of the *Strickland* test, we need not address the other. *See id.* at 697.

¶18 It is a prerequisite to appellate review of an ineffective assistance claim that the challenged attorney explain his or her actions at a postconviction evidentiary hearing. *See State v. Machner*, 92 Wis. 2d 797, 804, 285 N.W.2d 905 (Ct. App. 1979). The postconviction court must hold a *Machner* hearing if the defendant's motion "on its face alleges sufficient material facts that, if true, would entitle the defendant to relief." *State v. Allen*, 2004 WI 106, ¶9, 274 Wis. 2d 568, 682 N.W.2d 433. Whether the defendant's motion meets this standard is a question of law that we review independently. *See id.* "[I]f the motion does not raise facts sufficient to entitle the movant to relief, or presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief," the postconviction court has the discretion to deny the defendant's motion without a hearing. *Id.*

¶19 Hardenburg's ineffective assistance of counsel claim is based on defense counsel's failure to make any attempt to prevent the admission of Sasman's and Greene's conclusions about alleged amphetamines in Hardenburg's system. The claim is also based on defense counsel's failure to object to Macans's testimony about the results of the lab tests conducted by Sasman and Greene. Specifically, Hardenburg argues that without the alleged evidence of her heavy use

of amphetamines, the defense theory that Hardenburg was actually suffering from mental illness at the time of her arrest, as opposed to being impaired by consumption of a substance, would have been bolstered.

¶20 The State contends that even if Hardenburg's counsel was deficient in failing to object to the evidence, Hardenburg cannot demonstrate that she was prejudiced by the assumed deficiency because other evidence supported the jury's finding that Hardenburg was impaired at the time of her arrest. Specifically, the State points to testimony from both police officers that they suspected Hardenburg was intoxicated and to Macans's testimony about the results of lab tests that she herself conducted—tests which revealed other drugs in Hardenburg's system.

¶21 We disagree with the State's analysis and conclude that Hardenburg's postconviction motion alleged facts sufficient to warrant a *Machner* hearing. While Hardenburg did not contest evidence of her odd behavior at the time of her arrest, she argued about its causes. Because neither of the arresting officers actually saw Hardenburg driving, the State attributed Hardenburg's behavior—multiple times—to the allegedly high levels of amphetamines in her system. Both officers testified that they thought Hardenburg was intoxicated with alcohol; however, the toxicology report determined that Hardenburg did not have alcohol in her system. Macans testified that multiple other drugs were found in Hardenburg's blood, but she could not testify about the effects of those drugs, either individually or in conjunction with one another. Macans further acknowledged that the other drugs found in Hardenburg's system were within the therapeutic range.

¶22 The defense theory, on the other hand, was that Hardenburg's behavior was caused by mental illness. Kleinfeldt testified that he considered the

possibility that Hardenburg was suffering from mental illness. Macans also acknowledged that she could not differentiate between behavior caused by mental illness and behavior caused by high levels of amphetamines.

¶23 Accordingly, we conclude that Hardenburg's postconviction motion alleged sufficient material facts, which if true, would entitle her to an evidentiary hearing on her ineffective assistance of counsel claim because of the potential significance that the jury could have attached to purported evidence of her heavy use of amphetamines. Thus, we reverse the postconviction order and remand the matter for a *Machner* hearing.

*By the Court.*—Order reversed and cause remanded with directions.

Not recommended for publication in the official reports.