COURT OF APPEALS
DECISION
DATED AND FILED

May 20, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP1970**

STATE OF WISCONSIN

Cir. Ct. No. 2023CV5026

IN COURT OF APPEALS
DISTRICT I

---

JUSTICEPOINT, INC.,

  PLAINTIFF-APPELLANT,

 V.

CITY OF MILWAUKEE,

  DEFENDANT-RESPONDENT.

---

  APPEAL from an order of the circuit court for Milwaukee County: J.D. WATTS, Judge. *Affirmed.*

  Before White, C.J., Geenen, and Colón, JJ.

  **Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. JusticePoint, Inc. appeals from an order of the circuit court dismissing the complaint it filed against the City of Milwaukee after the City sent a notice to JusticePoint that it intended to terminate the contract under which JusticePoint provided services to defendants through the Municipal Court Alternative Services Program, commonly referred to as MCAP. JusticePoint argues that the Wisconsin Fair Dealership Law (WFDL), *see* WIS. STAT. ch. 135 (2023-24),[1] applies and prohibits the City from terminating the contract without good cause, proper notice, and an opportunity to cure. JusticePoint further argues that the City failed to satisfy the requirements of the WFDL, and JusticePoint argues that it is entitled to a temporary injunction prohibiting the City from terminating the contract.

¶2 We conclude that the WFDL does not apply to the contract between JusticePoint and the City, and therefore, we do not reach JusticePoint's additional arguments that the City failed to satisfy the requirements of the WFDL and that JusticePoint is entitled to a temporary injunction prohibiting the City from terminating the contract. Accordingly, we affirm the circuit court's order dismissing JusticePoint's complaint and denying JusticePoint's request for a temporary injunction.

## BACKGROUND

¶3 In 1983, the City established MCAP in response to a growing number of municipal court defendants with mental illness who were incarcerated as a result of an inability to pay their municipal fines. Today, MCAP assists

---

[1] All references to the Wisconsin Statutes are to the 2023-24 version.

municipal court defendants who are unable to pay their municipal fines due to indigence, mental health issues, substance abuse issues, or other special needs and provides alternatives to jail time or forfeitures.

¶4      In 2015 and again in 2019, the City issued a Request for Proposal (RFP), titled "Vendor Service Contract for Court Alternative Services," seeking a "vendor" to provide MCAP's services. As a result of the RFP process, the City chose JusticePoint both in 2015 and in 2019 to provide MCAP's services.[2] Each award was for a one-year contract, with four options to extend the contract for an additional one-year period upon mutual consent. In the most recent RFP that the City issued in 2019, the City described that it was looking for a vendor to "develop a program/service delivery system" to "meet[] the needs of the [municipal] [c]ourt," and the City listed several details about the type of program/service delivery system that the City sought in response to the RFP. Thus, JusticePoint provided MCAP's services beginning in 2015.

¶5      On May 15, 2023, during one of the contract extensions agreed upon by the parties, the City sent a notice of termination to JusticePoint,[3] and on July 10, 2023, JusticePoint filed a complaint against the City, alleging that the WFDL prohibited the City from terminating JusticePoint's contract without good cause, proper notice, and an opportunity to cure. JusticePoint further argued that the City

---

[2] Prior to JusticePoint, MCAP services were provided by Wisconsin Community Services and Justice 2000.

[3] The parties note that the termination was largely prompted by a concern over JusticePoint's practice of sharing municipal citations with Legal Action of Wisconsin. JusticePoint maintains that it immediately stopped this practice upon learning of the concern. The reason behind the City's decision to send a notice of termination is immaterial to our decision.

failed to comply with the requirements of the WFDL, and it sought a temporary restraining order (TRO) and an injunction. The circuit court initially granted JusticePoint's request for a TRO following a hearing held on July 10, 2023. However, following additional briefing and a hearing,[4] the circuit court found that the WFDL did not apply and dismissed JusticePoint's complaint and request for an injunction. JusticePoint appealed and sought a stay pending appeal, which this court granted.

## DISCUSSION

¶6     On appeal, JusticePoint argues that the circuit court erred when it found that the WFDL did not apply, and Justice Point argues that the circuit court erroneously dismissed its complaint against the City and denied its request for injunctive relief. We review a motion to dismiss independently, using the same standards as the circuit court. *Meyers v. Bayer AG, Bayer Corp.*, 2007 WI 99, ¶21, 303 Wis. 2d 295, 735 N.W.2d 448. A motion to dismiss should not be granted "unless it is clear that there are no circumstances under which the plaintiff can recover." *Id.* (citation omitted). "[W]e accept as true all facts as set forth in the complaint, and reasonable inferences that may be drawn from such facts." *Id.*

¶7     Reviewing the circuit court's decision requires us to interpret the WFDL. "The interpretation of a statute is a question of law that we review de novo." *E-Z Roll Off, LLC v. County of Oneida*, 2011 WI 71, ¶16, 335 Wis. 2d 720, 800 N.W.2d 421. "[S]tatutory interpretation 'begins with the language of the

---

[4] We note that, in addition to briefing by the parties, the Honorable Louis B. Butler, Jr. and the Honorable James A. Gramling, Jr. filed an amicus brief before the circuit court, indicating their general support for MCAP and the services provided through MCAP.

statute. If the meaning of the statute is plain, we ordinarily stop the inquiry.'" *State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110 (citation omitted). We give statutory language "its common, ordinary, and accepted meaning." *Id.*

¶8    "The WFDL governs 'dealerships,' which are specially-defined 'contract[s] or agreement[s]' entered into between 'grantors' and 'dealers.'" *Benson v. City of Madison*, 2017 WI 65, ¶21, 376 Wis. 2d 35, 897 N.W.2d 16 (alterations in original; citation omitted). Here, the threshold question is whether a dealership within the meaning of the WFDL exists between the City and JusticePoint.

¶9    The WFDL defines a "dealership" as:

> A contract or agreement, either expressed or implied, whether oral or written, between [two] or more persons, by which a person is granted the right to sell or distribute goods or services, or use a trade name, trademark, service mark, logotype, advertising or other commercial symbol, in which there is a community of interest in the business of offering, selling or distributing goods or services at wholesale, retail, by lease, agreement or otherwise.

WIS. STAT. § 135.02(3)(a). The definition of a dealership is typically considered "satisfied" by a showing of three elements: "(1) the existence of a contract or agreement between two or more persons; (2) by which a person is granted one of the rights specified; and (3) in which there is the requisite 'community of interest.'" *Benson*, 376 Wis. 2d 35, ¶35 (citation omitted).

¶10    Generally speaking, WIS. STAT. ch. 135 "shall be liberally construed and applied to promote its underlying remedial purposes and policies"; however, it is well established that "the rule of liberal construction set forth in § 135.025(1) does not … apply to the definition of 'dealership.'" *Benson*, 376 Wis. 2d 35, ¶36

(quoting § 135.025(1)). Whether a dealership exists is a question of law that we review de novo. *Kania v. Airborne Freight Corp.*, 99 Wis. 2d 746, 762-63, 300 N.W.2d 63 (1981).

¶11 Turning to the question of whether a dealership exists in this case, there is no dispute that the first element is satisfied and that the City and JusticePoint had a contract for JusticePoint to provide services through MCAP. Thus, we turn to the remaining elements, namely whether JusticePoint has been granted one of the rights specified and whether there is the requisite community of interest such that a dealership exists in this case.

¶12 To that end, JusticePoint argues that the circuit court erred in finding that JusticePoint was not selling or distributing the City's services but rather selling or distributing its own services through MCAP, such that it could not satisfy the second element of a dealership.[5] We agree with the circuit court, and we conclude that JusticePoint was distributing its own services. Therefore, we conclude that JusticePoint is unable to satisfy the second element to establish that a dealership exists in this case.

¶13 As clearly stated in the RFP issued by the City, the City sought a vendor to "develop a program/service delivery system" to "meet[] the needs of the [municipal] [c]ourt." JusticePoint then responded to the RFP and held itself out to the City as a vendor willing and equipped to provide the type of services sought by the City. When the City chose JusticePoint as its vendor through the RFP process,

---

[5] We limit our discussion to the right to sell or distribute goods or services. The parties do not develop an argument that JusticePoint was granted the right to use a trade name, logo, advertising, or other commercial symbol of the City.

the City then agreed to pay JusticePoint a certain amount on a set schedule for JusticePoint to provide those services. In other words, MCAP services were not a service that the City was selling or distributing to defendants on its own as a City service. Rather, in order for MCAP services to exist, the City hires outside vendors using the RFP process to provide the vendor's own services through MCAP.[6]

¶14 Consequently, the contract between JusticePoint and the City appears to be a typical vendor-vendee relationship, which leads us to the conclusion that JusticePoint was selling and distributing its own services. *See Bush v. National Schs. Studios, Inc.*, 139 Wis. 2d 635, 646-47, 407 N.W.2d 883 (1987) (stating that the WFDL is "sufficiently broad to encompass non-traditional business relationships" but "restrictive enough to avoid" every vendor-vendee relationship); *Central Corp. v. Research Prods. Corp.*, 2004 WI 76, ¶32, 272 Wis. 2d 561, 681 N.W.2d 178 ("These stringent requirements are intended to weed out the typical vendor-vendee relationship.").

¶15 Nevertheless, JusticePoint argues that the detailed requirements in the RFP about the program/service delivery system and the close coordination with the City indicate that JusticePoint was providing the City's services rather than its own because of the oversight that the City exercised over the services JusticePoint provided through MCAP. The first section from the RFP that JusticePoint points to as evidence of this lists the types of services sought by the City in response to the RFP, including professional screening and assessment of

---

[6] In fact, prior to JusticePoint, MCAP services were provided by other vendors including Wisconsin Community Services and Justice 2000.

defendants, providing sentencing options, providing assistance and follow up with defendants to ensure compliance with MCAP, and providing referrals and any necessary follow up with additional agencies. Regarding the second section, titled "Specific Terms and Conditions," JusticePoint argues that the City set location, hours, staffing, and reporting requirements for JusticePoint's operations.

¶16     While it is true that the RFP provided several requirements for this program/service delivery system, we construe these requirements as details for the program/service delivery system that the City was seeking from a vendor. Indeed, it would be difficult to imagine an RFP that did not provide some sort of details about the service being sought, and it would be difficult to fashion a response to an RFP that provided no details about what sort of service the City was seeking. Without a description and details on the services, there would be nothing for JusticePoint to respond to in submitting a bid, nothing for JusticePoint to evaluate whether it is a candidate to submit a bid, and nothing for the City to use to evaluate submissions and determine who the best match is for the type of services sought in the RFP. Thus, we do not construe the detailed requirements in the RFP as an indication that JusticePoint was providing the City's services.

¶17     Rather, we consider this case similar to *Bakke Chiropractic Clinic v. Physicians Plus Insurance Corp.*, 215 Wis. 2d 605, 573 N.W.2d 542 (Ct. App. 1997), where we concluded the WFDL did not apply. In *Bakke Chiropractic Clinic*, we addressed an agreement between an insurance company and chiropractors under which the insurance company agreed to refer its insureds to the chiropractors and pay the chiropractors an agreed-upon rate for their services on behalf of the insureds. *Id.* at 608-09. We concluded that the agreement did not meet the definition of a dealership because the chiropractors were selling and distributing their own chiropractic services to the insurance company. *Id.* at 613,

620. We characterized the agreements "as contracts for the 'bulk sale' of chiropractic services by the providers to [the insurance company], which purchased those services to fulfill its obligation as an HMO insurer to provide chiropractic care for its members." *Id.* at 614.

¶18 Similar to ***Bakke Chiropractic Clinic***, JusticePoint's contract with the City amounts to a bulk sale of JusticePoint's own services to the City, which purchased those services to fulfill an obligation to defendants in Milwaukee. In other words, we construe the facts to indicate that JusticePoint sold its own services to the City, and the City paid JusticePoint on behalf of defendants to provide those services through MCAP. To be clear, JusticePoint also provides nearly identical services to other courts, and while JusticePoint may have to tailor finer details of the services that it provides to better serve each court in which it operates, JusticePoint is providing these services to others apart from the City, further indicating that these are JusticePoint's own services that it sold to the City and distributes through MCAP.

¶19 In determining whether a dealership exists, "courts should consider the overriding principle of whether the business'[s] status is dependent upon the relationship with the grantor for its economic livelihood." ***Bush***, 139 Wis. 2d at 651. Given that JusticePoint provides these services to more than the City, we cannot say that JusticePoint is so dependent on its relationship with the City for its economic livelihood that this fact points us to a conclusion that a dealership exists. Moreover, just as we concluded in ***Bakke Chiropractic Clinic***, the fact that the City may be required to provide these or similar services to fulfill the objectives of MCAP "does not alter the relationship between the parties." *See **id.***, 215 Wis. 2d at 618.

¶20      JusticePoint further argues that a conclusion that no dealership exists here conflicts with our supreme court's holding in **Benson**.  We disagree.

¶21      In **Benson**, our supreme court answered two main questions: first, that the WFDL could apply to a municipality, such as the City of Madison, and second, that an agreement between the City of Madison and Golf Pros to operate golf courses in Madison was a dealership.  **Id.**, 376 Wis. 2d 35, ¶¶4-5.  Our supreme court's first conclusion that the WFDL could apply to a municipality, such as the City of Madison, does not automatically require the application of the WFDL to a municipal contract.  As to the second conclusion, our supreme court noted that the Golf Pros were selling the City of Madison's service of providing a functioning golf course to members of the public.  **Id.**, ¶46.  JusticePoint does not hold a similar position in relation to the City as the Golf Pros did to the City of Madison in **Benson**.  Rather, as we previously stated, JusticePoint holds a position more akin to that of the chiropractors in **Bakke Chiropractic Clinic**, and the City in this case, through MCAP, pays for defendants to have access to JusticePoint's services that then provide defendants with certain services and alternatives in municipal court proceedings.

¶22      JusticePoint further argues that a conclusion here that it was providing its own services conflicts with the Seventh Circuit's application of the WFDL in **Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of America, Inc.**, 549 F.3d 1079 (7th Cir. 2008), and imposes an "atextual" requirement that JusticePoint generate a profit or realize some financial benefit related to selling City services.  Our conclusion imposes no requirement that a business generate a profit from the sale of goods or services in order to satisfy the second element of a dealership.  While our case law does suggest that the generation of a profit is an indication of the existence of a dealership, the existence

of a dealership is more complex than simply the generation of a profit. *See Bush*, 139 Wis. 2d at 655; *Central Corp.*, 272 Wis. 2d 561, ¶35.

¶23 Thus, we conclude that JusticePoint is distributing its own services under MCAP and fails to satisfy the second element of a dealership. Having concluded that JusticePoint is not selling or distributing any City goods or services to satisfy the second element, we do not address whether the third element of whether a community of interest exists in this case. We conclude that the circuit court properly found that the WFDL does not apply to the contract between JusticePoint and the City and properly dismissed JusticePoint's complaint and request for an injunction prohibiting the City from terminating its contract. *See Bakke Chiropractic Clinic*, 215 Wis. 2d at 613, 624 (stating that it is unnecessary to address the third element of community of interest when a party fails to meet the requirements of the second element). Additionally, as a result of our conclusion that the WFDL does not apply here, we do not address JusticePoint's arguments regarding whether the City's termination of the contract violated the WFDL or whether the WFDL's injunctive relief applies in this case. *See State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989) ("[C]ases should be decided on the narrowest possible ground[.]").

¶24 However, while not necessary to our conclusion today, we observe that the City argues that a conclusion that JusticePoint is covered by the WFDL would "effectively swallow public procurement law" and would open the door to countless other contracts obtained through the public procurement process to the protections of the WFDL. The City contends that subjecting contracts obtained through the public procurement process to the protections of the WFDL would make it nearly impossible for a government entity to ever terminate a contract that it determines is no longer serving the public good.

¶25    The application of the WFDL remains a fact-specific and case-by-case analysis. *See Bush*, 139 Wis. 2d at 646-47, 652 ("The issue most frequently presented is the same one we consider here: whether a certain business relationship falls within the WFDL's definition of 'dealership.'"); *Central Corp.*, 272 Wis. 2d 561, ¶¶29-31 ("In order to determine if the WFDL applies to a given business relationship, the court must determine if the parties' relationship could, in fact, be characterized as a dealership with one party being the dealer and the other the grantor of the dealership."). There is no one category of contracts that automatically triggers the protections of the WFDL, and whether the WFDL applies will necessarily require an examination of the specific contract at issue.

## CONCLUSION

¶26    In sum, we conclude that the WFDL does not apply to the contract between JusticePoint and the City and, therefore, the circuit court properly dismissed JusticePoint's complaint and denied JusticePoint's request for an injunction. We, therefore, affirm.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.