Judith HAASE-HARDIE and David L. Jacobs,
Petitioners-Appellants,

v.

Wisconsin DEPARTMENT OF NATURAL RESOURCES,
Respondent-Respondent,

PREFERRED SANDS OF WISCONSIN, LLC,
Intervenor-Respondent.

Court of Appeals

*No. 2013AP2827. Submitted on briefs August 5, 2014.
—Decided September 3, 2014.*

2014 WI App 103

(Also reported in 855 N.W.2d 443.)

On behalf of the petitioners-appellants, the cause was submitted on the briefs of *Sarah Williams* and *James E. Parra* of *Midwest Environmental Advocates, Inc.*, Madison.

On behalf of the respondent-respondent, the cause was submitted on the brief of *Maura FJ Whelan*, assistant attorney general, and *J.B. Van Hollen*, attorney general.

On behalf ofhe intervenor-respondent, the cause was submitted on the brief of *William H. Harbeck, Peter A. Tomasi* and *David A. Strifling* of *Quarles & Brady LLP*, Milwaukee.

Before Hoover, P.J., Stark, J., and Thomas Cane, Reserve Judge.

¶ 1. STARK, J. Judith Haase-Hardie and David L. Jacobs (collectively, Haase-Hardie) appeal an order dis-

missing their petition for judicial review of a decision of the Wisconsin Department of Natural Resources (DNR). The DNR granted Haase-Hardie's petition for a contested case hearing on three issues related to air pollution control permits issued to Preferred Sands of Wisconsin, LLC. However, the DNR refused to grant a contested case hearing on four additional issues raised in Haase-Hardie's petition, concluding Haase-Hardie had not demonstrated that those issues involved disputes of material fact. Haase-Hardie argues she was entitled to a contested case hearing on all seven of the issues raised in her petition because each issue involved at least one dispute of material fact. In the alternative, Haase-Hardie argues she did not need to demonstrate disputes of material fact regarding every issue raised in the petition because, as long as any one of the issues involved a dispute of material fact, she was entitled to a contested case hearing on all of the issues.

¶ 2. We agree with the DNR and the circuit court that Haase-Hardie failed to demonstrate the existence of disputes of material fact regarding four of the issues raised in her petition for a contested case hearing. In addition, we reject Haase-Hardie's argument that she was entitled to a contested case hearing on each issue raised in the petition as long as she showed the existence of a dispute of material fact regarding one of the issues. We therefore affirm.[1]

---

[1] The DNR and Preferred Sands argue for two additional reasons that Haase-Hardie is not entitled to a contested case hearing on some of the issues raised in her petition. Because we affirm on other grounds, we need not address these additional arguments. *See State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989) (cases should be decided on the narrowest possible ground).

## BACKGROUND

¶ 3. On May 31, 2011, the DNR issued a combined "Air Pollution Control Construction Permit" and "Air Pollution Control Operation Permit" to Winn Bay Sand, LP, for construction and operation of an industrial sand mine and processing facility located approximately two miles northwest of the City of Blair in Trempealeau County.[2] Preferred Sands purchased the Blair facility from Winn Bay in December 2011.

¶ 4. On June 5, 2012, the DNR notified Preferred Sands that it was in violation of the air pollution control permits for the Blair facility. In response, Preferred Sands submitted an application to revise the permits on July 13, 2012. The application requested eleven revisions to the permits, including nine substantive changes.

¶ 5. The DNR completed its "Analysis and Preliminary Determination" regarding Preferred Sands' application in November 2012. The DNR then issued draft permits based on its analysis and a "Public Notice

---

[2] The DNR issues air pollution control permits under a permitting program approved by the United States Environmental Protection Agency. *Sierra Club v. DNR*, 2010 WI App 89, ¶¶ 8–9, 327 Wis. 2d 706, 787 N.W.2d 855. Pursuant to Wis. Stat. § 285.60(1), air pollution control permits are required for the construction and operation of all nonexempt "stationary sources." A stationary source is "any facility, building, structure or installation that directly or indirectly emits or may emit an air contaminant only from a fixed location." Wis. Stat. § 285.01(41). It is undisputed that the Blair facility qualifies as a stationary source and therefore requires air pollution control construction and operation permits.

All references to the Wisconsin Statutes are to the 2011–12 version unless otherwise noted.

of an Air Pollution Permit Application Review[.]"[3] The notice invited the public to submit written comments on Preferred Sands' application and announced that a public hearing would be held on December 20, 2012. Several representatives from Preferred Sands attended the December 20 hearing, but no members of the public attended.

¶ 6. Thereafter, Midwest Environmental Advocates, Inc., submitted written comments regarding Preferred Sands' application.[4] The DNR summarized its responses to these comments in an internal memorandum dated January 18, 2013. On the same day, the DNR issued final air pollution control construction and operation permits to Preferred Sands.

¶ 7. Haase-Hardie subsequently petitioned the DNR for a contested case hearing on seven substantive issues related to Preferred Sands' permits.[5] The petition asserted Haase-Hardie lives near the Blair facility and is affected by the facility's emissions.

[3] Public notice regarding Preferred Sands' permit application was required pursuant to Wis. Stat. §§ 285.61(5) and 285.62(3).

[4] According to its website, Midwest Environmental Advocates is "a non-profit environmental law center that works for healthy water, air, land and government for this generation and the next." *See* http://midwestadvocates.org (last visited August 19, 2014). Midwest Environmental Advocates represents Haase-Hardie in the present appeal.

[5] Haase-Hardie's petition actually requested a contested case hearing on six issues. However, in its subsequent decision, the DNR divided the third issue Haase-Hardie raised into two separate issues, granting a contested case hearing on the first and denying a hearing on the second. For consistency, the parties therefore refer to Haase-Hardie's petition as raising seven issues, rather than six. We do the same.

¶ 8. On March 25, 2013, the DNR issued a decision granting a contested case hearing on the first three issues raised in Haase-Hardie's petition, namely:

- Issue 1: Whether the DNR erred by failing to consider all potential dust sources, including fugitive dust sources, in its air quality modeling analysis.

- Issue 2: Whether Preferred Sands met the necessary criteria for permit approval, including the requirement under WIS. STAT. § 285.63(1)(a) that the Blair facility meet all applicable emission limitations.

- Issue 3: Whether the DNR appropriately considered the type of pollutant controls used by Preferred Sands—known as baghouses—in its air quality modeling analysis and set appropriate emission limits based on that modeling.

The DNR denied Haase-Hardie's request for a contested case hearing on the following four issues:

- Issue 4: Whether the DNR erred by failing to require Preferred Sands to conduct periodic compliance emission testing, also known as stack testing.

- Issue 5: Whether the DNR erroneously exercised its discretion by not requiring Preferred Sands to conduct daily dust control recordkeeping and to periodically submit those records to the DNR.

- Issue 6: Whether the DNR erred by including insufficient ambient air monitoring provisions in the permits and by not requiring Preferred Sands to conduct ambient air monitoring for $PM_{2.5}$, a type of particulate matter.

- Issue 7: Whether the DNR erred by deciding not to conduct an environmental assessment (EA).[6]

The DNR concluded Haase-Hardie was not entitled to a contested case hearing on Issues 4 though 7 because she had not shown that they involved disputes of material fact.

¶ 9. Haase-Hardie petitioned for judicial review of the DNR's decision, arguing the DNR incorrectly determined she failed to demonstrate that Issues 4 through 7 involved disputes of material fact. Alternatively, Haase-Hardie argued she was not required to demonstrate the existence of material factual disputes regarding Issues 4 through 7 because she had shown the existence of material factual disputes regarding Issues 1 through 3, and she was therefore entitled to a contested case hearing on all the issues raised in her petition. The circuit court rejected Haase-Hardie's arguments and dismissed her petition for judicial review. This appeal follows.

## DISCUSSION

¶ 10. WISCONSIN STAT. § 285.81, entitled "Hearings on certain air pollution actions," governs petitions for

---

[6] An EA is "an environmental analysis which is prepared to inform decision-makers of a proposed action's effect on the environment, and which develops, describes and evaluates alternatives, and provides sufficient evidence to determine whether the proposed action is a major action." WIS. ADMIN. CODE § NR 150.02(9) (Feb. 2010).

WISCONSIN ADMIN. CODE ch. NR 150 was significantly revised in March 2014. We therefore refer to the previous, February 2010 version of that chapter. All other citations to the Wisconsin Administrative Code are to the current version because the relevant provisions have not changed since Preferred Sands submitted its permit application.

contested case hearings regarding air pollution control permits issued under WIS. STAT. § 285.60. Subsection 285.81(1) gives a permit holder, permit applicant, or order recipient the right to petition the DNR for a contested case hearing regarding "[a]ny permit, part of a permit, condition or requirement in a permit, order, decision or determination by the department under . . . [s.] 285.60" within "30 days after the date of the action sought to be reviewed." Subsection 285.81(2), in turn, provides that any other person "who meets the requirements of s. 227.42(1) or who submitted comments in the public comment process under s. 285.62(4) or (5) may seek review under sub. (1) of any permit, part of a permit, order, decision or determination by the department under . . . [s.] 285.60[.]"

¶ 11. Haase-Hardie is not a permit holder, permit applicant, or order recipient. *See* WIS. STAT. § 285.81(1). In addition, she did not "submit[] comments in the public comment process under s. 285.62(4) or (5)[.]" *See* WIS. STAT. § 285.81(2). Consequently, to obtain a contested case hearing on Preferred Sands' air pollution control permits, Haase-Hardie had to establish that she "[met] the requirements of s. 227.42(1)[.]" *See* WIS. STAT. § 285.81(2).

¶ 12. Whether a party has a right to a contested case hearing under WIS. STAT. § 227.42(1) is a question of law that we review independently.[7] *Shearer v. DNR*,

[7] Although we give agencies' legal conclusions deference under certain circumstances, de novo review is appropriate in this case because the DNR "is not charged with administering [WIS. STAT. ch.] 227, although it is subject to its provisions," and the DNR has not shown that it has "any special expertise or any long-continued practice in applying the contested-case provisions of Chapter 227[.]" *See Metropolitan Greyhound Mgmt.*

151 Wis. 2d 153, 158, 443 N.W.2d 669 (Ct. App. 1989). Subsection 227.42(1) provides:

> In addition to any other right provided by law, any person filing a written request with an agency for hearing shall have the right to a hearing which shall be treated as a contested case if:
>
> (a) A substantial interest of the person is injured in fact or threatened with injury by agency action or inaction;
>
> (b) There is no evidence of legislative intent that the interest is not to be protected;
>
> (c) The injury to the person requesting a hearing is different in kind or degree from injury to the general public caused by the agency action or inaction; *and*
>
> (d) There is a dispute of material fact.

(Emphasis added.) It is undisputed that Haase-Hardie met the requirements set forth in § 227.42(1)(a)-(c). However, the DNR and the circuit court concluded Haase-Hardie had not established the existence of "dispute[s] of material fact" regarding Issues 4 though 7. *See* Wis. Stat. § 227.42(1)(d). Haase-Hardie disagrees. Alternatively, she argues § 227.42(1)(d) does not require her to establish a dispute of material fact regarding every issue raised in her petition for a contested case hearing, as long as she can show the existence of a single material factual dispute regarding one of the issues. We address these arguments in turn.

*Corp. v. Wisconsin Racing Bd.*, 157 Wis. 2d 678, 688–89, 460 N.W.2d 802 (Ct. App. 1990) (reviewing de novo the Wisconsin Racing Board's decision that appellants were not entitled to a contested case hearing under Wis. Stat. § 227.42(1)).

## I. Disputes of material fact regarding Issues 4 through 7

█

¶ 13. The term "dispute of material fact" is not defined in WIS. STAT. § 227.42(1) or in the case law interpreting that statute. However, "material fact" is a well-established term of art in cases employing summary judgment methodology. *See* WIS. STAT. § 802.08(2) (moving party is entitled to summary judgment only if there is "no genuine issue as to any material fact"). In the summary judgment context, a material fact is "one that is 'of consequence to the merits of the litigation.' " *Schmidt v. Northern States Power Co.*, 2007 WI 136, ¶ 24, 305 Wis. 2d 538, 742 N.W.2d 294 (quoting *Michael R.B. v. State*, 175 Wis. 2d 713, 724, 499 N.W.2d 641 (1993)). In other words, it is a fact that "affects the resolution of the controversy[.]" *Clay v. Horton Mfg. Co.*, 172 Wis. 2d 349, 354, 493 N.W.2d 379 (Ct. App. 1992). Applying this understanding of the term "material fact" to the case at hand, we conclude Haase-Hardie has not established the existence of any disputes of material fact regarding Issues 4 through 7.

### A. *Issue 4*

¶ 14. Issue 4 in Haase-Hardie's petition for a contested case hearing asserted the DNR erred by failing to require Preferred Sands to conduct periodic compliance emission testing, also known as stack testing. A compliance emission test is "a performance test required by the [DNR] or conducted in cooperation with the [DNR] involving the quantitative measurement of air contaminants as they are emitted from a source to determine compliance with an emission limitation."

Wɪs. Aᴅᴍɪɴ. Cᴏᴅᴇ § NR 439.02(3) (Jan. 2012). An air pollution control operation permit must require "[c]ompliance testing . . . sufficient to assure compliance with the terms and conditions of the permit." Wɪs. Aᴅᴍɪɴ. Cᴏᴅᴇ § NR 407.09(4)(a)1. (Feb. 2014).

¶ 15. Haase-Hardie's petition essentially contended that the relevant statutes and regulations required periodic compliance emission testing as a condition of Preferred Sands' permits, but the DNR failed to impose that condition. As Haase-Hardie concedes on appeal, whether the DNR was legally obligated to require compliance emission testing is a "legal question[,]" not a dispute of material fact.

¶ 16. Nevertheless, Haase-Hardie asserts she is entitled to a contested case hearing on Issue 4 because there are "four disputes of material fact relevant to this legal question[:]"

- Whether the design and operation of the Blair facility and the emission limits in the permits necessitate the use of compliance emission tests to assure compliance with the permits' terms;

- Whether the baghouses used by Preferred Sands to control pollution lose efficiency over time and thus require additional compliance testing;

- Whether the low emission limits in the permits warrant additional compliance testing to assure the baghouses are actually achieving the limits; and

- Whether the baghouses used by Preferred Sands are capable of achieving the low emission limits in the permits.

Haase-Hardie asserts these issues are disputes of material fact because she "must present evidence" to prevail on them. For instance, she asserts she "could

establish that the DNR erred in failing to require Preferred Sands to conduct periodic compliance emission testing" by presenting evidence "regarding the efficacy of baghouses at startup and over time to demonstrate that they are not sufficient to meet the low permit limits[.]"

¶ 17. The problem with Haase-Hardie's argument is that the factual disputes she identifies, and the evidence she seeks to present, are material to the second and third issues raised in her petition for a contested case hearing, namely: whether Preferred Sands met the necessary criteria for permit approval, including the requirement that the Blair facility meet all applicable emission limitations; and whether the DNR appropriately considered the limitations of baghouses in setting emission limits for the Blair facility. The DNR has already granted Haase-Hardie a contested case hearing on those issues. Haase-Hardie has not established the existence of any factual dispute material to the legal question raised by Issue 4. Accordingly, she is not entitled to a contested case hearing on that issue.

## B. Issue 5

¶ 18. Issue 5 in Haase-Hardie's petition for a contested case hearing asserted the DNR erroneously exercised its discretion by not requiring Preferred Sands to conduct daily dust control recordkeeping and to periodically submit those records to the DNR. Haase-Hardie notes that an air pollution control operation permit must contain reporting and recordkeeping requirements sufficient to assure compliance with the permit's terms and conditions. *See* WIS. ADMIN. CODE § NR 407.09(4)(a)1. (Feb. 2014). She further notes that

one of the required permit terms for industrial sand mines and processing facilities is a "fugitive dust control plan," which is a plan "to prevent, detect and correct malfunctions, equipment failures or other circumstances which may cause any applicable emission limitation to be violated or which may cause air pollution." Wis. Admin. Code § NR 415.075(6)(a) (Oct. 2003).

¶ 19. Haase-Hardie concedes that Preferred Sands' operating permit includes a fugitive dust control plan. Further, the permit requires Preferred Sands to "record and maintain records of . . . all precautions taken to prevent fugitive dust under the Fugitive Dust Control Plan[,]" to keep these records for at least five years, and to make them "available to [DNR] personnel upon request[.]" Haase-Hardie asserts the DNR has the "authority" and "obligation" to impose more stringent recordkeeping and reporting requirements. However, whether the applicable statutes and regulations require the DNR to impose particular recordkeeping and reporting requirements on Preferred Sands is a question of law, not a dispute of material fact.

¶ 20. Perhaps recognizing that Issue 5 poses a legal question, Haase-Hardie asserts there is an underlying dispute of material fact as to whether "site-specific and facility-specific factors . . . necessitate additional recordkeeping and reporting requirements . . . to assure compliance with the terms and conditions of [Preferred Sands'] permits." However, the only site- or facility-specific factor Haase-Hardie identifies is "Preferred Sands' prior noncompliance with permit terms and conditions[.]" This fact is not disputed, though, because all of the parties agree that Preferred Sands violated the original permits for the Blair facility. In addition, Haase-Hardie completely fails to explain the connection between Preferred Sands' past violations

and the recordkeeping and reporting requirements she believes the DNR should impose. Haase-Hardie has therefore failed to show that any factual dispute is "material" because she has not shown that it is " 'of consequence to the merits of the litigation.' " *See Schmidt*, 305 Wis. 2d 538, ¶ 24 (quoting *Michael R.B.*, 175 Wis. 2d at 724). For these reasons, Haase-Hardie has not convinced us that Issue 5 involves a dispute of material fact, and she is therefore not entitled to a contested case hearing on that issue.[8]

*C. Issue 6*

¶ 21. Issue 6 in Haase-Hardie's petition for a contested case hearing alleged that the DNR erred by including insufficient ambient air monitoring provisions in Preferred Sands' permits and by not requiring Preferred Sands to conduct ambient air monitoring for $PM_{2.5}$, a type of particulate matter. Again, whether the ambient air monitoring provisions in Preferred Sands' permits comply with the relevant statutes and regulations, and whether the DNR was obligated to require ambient air monitoring for $PM_{2.5}$, are questions of law, not disputes of material fact.

¶ 22. Haase-Hardie asserts there are two disputes of material fact relevant to the legal questions raised by Issue 6. Once again, she asserts Preferred Sands' "past noncompliance" is a material factual dispute. However, as explained above, Preferred Sands' past noncompli-

---

[8] Further, the DNR has already granted Haase-Hardie a contested case hearing on the first issue raised in her petition —whether the DNR erred by failing to consider all potential dust sources, including fugitive dust sources, in its air quality modeling analysis. Thus, to the extent more factual investigation into the Blair facility's dust production is needed, those facts will be explored at the contested case hearing.

ance is an undisputed fact, and Haase-Hardie fails to explain how this fact is material to the legal questions raised by Issue 6. Haase-Hardie also alleges the "inability of the pollutant controls to meet permit limits" is a dispute of material fact, but she does not explain to which pollutant controls she refers. We can only assume she is again referring to the alleged inadequacy of baghouses to meet the emission limits required by Preferred Sands' permits. If so, the DNR has already granted Haase-Hardie a contested case hearing on that issue. Consequently, Haase-Hardie has failed to identify a factual dispute that is material to Issue 6, and she is not entitled to a contested case hearing on that issue.

## D. *Issue 7*

¶ 23. The final issue raised in Haase-Hardie's petition for a contested case hearing alleged that the DNR erred by deciding not to conduct an EA in conjunction with Preferred Sands' permit application. In November 2012, the DNR classified the "proposed project [as] a Type III action under Chapter NR 150, Wis. Adm. Code[.]" Haase-Hardie does not dispute the DNR's decision to classify Preferred Sands' project as a Type III action. Type III actions "do not require an EA[.]" Wis. Admin. Code § NR 150.20(1)(b)3. (Feb. 2010). How-ever, the DNR may require that an EA be prepared for a Type III action if:

a. The [DNR] determines that the proposed action may significantly affect the quality of the human environment.

b. Scarce resources, such as critical habitat for threatened or endangered species, valued fish spawning areas, wetlands, historic, cultural, scenic or recreational areas, may be affected.

457

 c. Substantial acute risk, to human life or health, or to significant natural resources due to failure of pollution control systems, fire or other reasonably foreseen failures at the proposed facility, may be created.

 d. An EA . . . is otherwise required under s. NR 150.20 (2)(b).

WIS. ADMIN. CODE § NR 150.20(1)(b)4. (Feb. 2010).

¶ 24. Haase-Hardie argues the DNR erred in this case because it decided not to require an EA, but it did not make a record detailing its consideration of the factors listed in WIS. ADMIN. CODE § NR 150.20(1)(b)4. (Feb. 2010). However, Haase-Hardie does not cite any authority requiring the DNR to make such a record. Moreover, whether the DNR was required to document its consideration of the factors listed in the administrative code is a legal question, not a dispute of material fact.

¶ 25. Haase-Hardie also argues the DNR was required to consider "the cumulative impacts of many frac sand facilities in the area" when deciding whether to require an EA. Again, this is a legal question, not a dispute of material fact. Further, Haase-Hardie cites no authority requiring the DNR to consider cumulative impacts when deciding whether to require an EA.

¶ 26. Lastly, Haase-Hardie faults the DNR for failing to consider Preferred Sands' past noncompliance and any other "facility-specific circumstances[.]" Haase-Hardie's past noncompliance argument fails for the reasons explained above. *See supra,* ¶¶ 20, 22. In addition, Haase-Hardie does not identify any other "facility-specific circumstances" she believes the DNR should have considered when deciding whether to require an EA. She has therefore failed to establish that

458

those purported circumstances constitute a dispute of material fact. Having failed to establish the existence of a dispute of material fact, Haase-Hardie is not entitled to a contested case hearing on Issue 7.

## II. Interpretation of Wis. Stat. § 227.42(1)

¶ 27. Alternatively, Haase-Hardie argues she did not need to establish a dispute of material fact regarding each issue raised in her petition for a contested case hearing. Instead, she argues that, under the plain language of Wis. Stat. § 227.42(1), she was entitled to a contested case hearing on all seven of the issues raised in her petition as long as she established a dispute of material fact regarding one of them. The DNR granted Haase-Hardie a contested case hearing on Issues 1 through 3, implicitly conceding that those issues involved disputes of material fact. As a result, Haase-Hardie argues the DNR was also required to grant her a contested case hearing on Issues 4 through 7.

¶ 28. Haase-Hardie's argument requires us to interpret Wis. Stat. § 227.42(1). This is a question of law that we review independently. *McNeil v. Hansen*, 2007 WI 56, ¶ 7, 300 Wis. 2d 358, 731 N.W.2d 273. Statutory interpretation begins with the language of the statute. *State ex rel. Kalal v. Circuit Court for Dane Cnty.*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. "Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." *Id.* A statute must be interpreted in context, and reasonably, to avoid absurd or unreasonable results. *Id.*, ¶ 46. " 'If this process of analysis yields a plain, clear statutory meaning, then

there is no ambiguity, and the statute is applied according to this ascertainment of its meaning.' " *Id.* (quoting *Bruno v. Milwaukee Cnty.*, 2003 WI 28, ¶ 20, 260 Wis. 2d 633, 660 N.W.2d 656). A statute is ambiguous if the statutory language gives rise to more than one reasonable interpretation. *State v. West*, 2011 WI 83, ¶ 54, 336 Wis. 2d 578, 800 N.W.2d 929. When a statute is ambiguous, we may consult extrinsic sources of statutory interpretation. *Kalal*, 271 Wis. 2d 633, ¶ 50.

¶ 29. WISCONSIN STAT. § 227.42(1) does not explicitly state whether a party seeking a contested case hearing must identify a dispute of material fact related to each substantive issue raised in the party's petition, or whether a single factual dispute related to one of the issues entitles the party to a contested case hearing on every issue. The statute merely states that the petitioner "shall have the right" to a contested case hearing if, among other things, "[t]here is a dispute of material fact." WIS. STAT. § 227.42(1)(d). Thus, at first blush, the plain language of the statute appears amenable to both Haase-Hardie's interpretation and the interpretation advanced by the DNR and Preferred Sands.

■

¶ 30. However, closer examination shows that Haase-Hardie's interpretation of the statute is unreasonable because it produces absurd results. *See Kalal*, 271 Wis. 2d 633, ¶ 46 (statutes must be interpreted reasonably, to avoid absurd results). To illustrate, the permits at issue in this case are over fifty pages long and contain dozens of provisions. The administrative record leading up to the permits' issuance is nearly 1400 pages long. Under these circumstances, the number of potential areas of disagreement between the DNR, the permit applicant, and the public is enormous. If Haase-Hardie's interpretation of WIS. STAT. § 227.42(1) were

correct, a petitioner would be entitled to a contested case hearing on every one of those potential disagreements, whether legal or factual, simply because he or she was able to identify a single dispute of material fact regarding one of them. We agree with the DNR and Preferred Sands that this result is absurd and would place an unreasonable burden on administrative agencies. Further, it would make no sense to require the DNR to hold contested, evidentiary hearings on purely legal issues that do not require the presentation of evidence. Consequently, the only reasonable interpretation of § 227.42(1) is the one advanced by the DNR and Preferred Sands—namely, that a petitioner is entitled to a contested case hearing only on those specific issues which involve disputes of material fact. Accordingly, the statute is not ambiguous. *See West*, 336 Wis. 2d 578, ¶ 54 (statute is ambiguous if language gives rise to more than one *reasonable* interpretation).

¶ 31. Further, even if we found Wis. Stat. § 227.42(1) ambiguous, we would nevertheless adopt the interpretation advanced by the DNR and Preferred Sands based on the analogous procedure used by courts considering summary judgment motions. When analyzing a summary judgment motion in a lawsuit involving multiple claims, a court must separately assess whether there are disputed issues of material fact regarding each claim in the complaint. *See, e.g., Goudy v. Yamaha Motor Corp.*, 2010 WI App 55, 324 Wis. 2d 441, 782 N.W.2d 114. If the court finds there are disputed issues of material fact regarding a particular claim, the court will deny summary judgment on that claim and allow it to proceed to trial. *See id.*, ¶ 28. However, if the court finds there are no disputed issues of material fact regarding a different claim (and the movant is entitled to judgment as a matter of law), the court will grant the

movant summary judgment on that claim. *See id.*, ¶¶ 19, 22. The party opposing summary judgment is not entitled to a trial on all of the claims in his or her complaint simply because disputed issues of material fact exist with respect to one of the claims. Similarly, a party who has petitioned for a contested case hearing under § 227.42(1) is not entitled to a hearing on all of the issues raised in his or her petition simply because disputes of material fact exist regarding one of the issues.

¶ 32. Haase-Hardie complains that this interpretation of WIS. STAT. § 227.42(1) is inconsistent with "the opportunity for a full and fair hearing." However, as Haase-Hardie concedes, she could have raised any legal issues related to Preferred Sands' permits in a petition for judicial review of the DNR's decision to issue the permits, pursuant to WIS. STAT. § 227.52. Haase-Hardie chose not to do so. Under these circumstances, we agree with the DNR that Haase-Hardie "cannot now use [her] appeal to this court as a vehicle to obtain judicial review of [the] DNR's legal decisions."

*By the Court.*—Order affirmed.